## CALVIN P. DEVEREAUX v. THE ESTATE OF NATHANIEL G. PHILLIPS, DECEASED.

*Bills and notes—Accommodation maker—Evidence.*

The question involved in this case is whether the decedent was an accommodation maker of a note, the amount of which was allowed against his estate in the probate court, and disallowed at the circuit, and the judgment is affirmed on the ground that the evidence shows that he bore that relation to the note.

Error to Shiawassee. (Newton, J.) Submitted on briefs July 26, 1893. Decided October 2, 1893.

Appeal from the allowance of a claim in probate court. Claimant brings error. Affirmed. The facts are stated in the opinion.

*Walter McBride,* for appellant.

*Lyon & Hadsall,* for defendant.

HOOKER, C. J.    The basis of this proceeding was a promissory note, of which a copy follows, viz.:

"$500.                              BANCROFT, May 24, 1886.
  "Two years after date, I promise to pay to the order of L. S. Matherson, or bearer, $500, value received, payable at Bancroft, with interest at 7 per cent., semi-annually.
                                    "C. P. DEVEREAUX.
                                    "N. G. PHILLIPS."

A number of payments had been made by Devereaux, and were indorsed upon the note.    Mr. Phillips having died, an action was commenced, and a judgment was rendered by the circuit court for the county of Shiawassee in favor of the payee, Mr. Matherson, and against Mr. Devereaux, for the amount unpaid, $160.71. · A claim was thereupon presented against the estate of Mr. Phillips, upon which Devereaux was allowed the sum of $500.    From this allowance the estate appealed. .    The circuit judge directed a verdict for the defendant, upon the ground that the uncontradicted evidence showed that Mr. Phillips was an accommodation maker, at the request of Mr. Devereaux.

The claimant asserts that, being about to remodel his grist mill at Bancroft, in which village deceased had large personal and financial interests, he (Phillips) gave him a bonus of $500, and, not having the money at the time, obtained it of Mr. Matherson by the means of this note. Our attention is called to the following testimony, which is claimed to establish a *prima facie* case, viz.:

1. The testimony of the physician who attended Phillips. He says: ·

"*Q.* You may go on.

"*A.* I had a conversation with him. After Mr. Phillips began to convalesce, I called over one morning, and, as I went into the parlor where he was lying on the lounge, he says, 'Good morning.' I says, 'Good morning, Mr. Phillips.' He says, 'How are they getting on over town?' I says, 'All right, I presume.' 'How is Devereaux getting along?' he says. I says, 'All right, I guess; they say he is getting in a nice process for manufacturing buckwheat flour.' I added, 'If he goes on and puts roller process into that old mill, it smells pretty strong of money.' He says, 'Yes; he wanted some money a while ago, and I signed his note to Matherson for $500; I hadn't sold my wheat, and hadn't the money consequently on hand;' and further added, 'I will try and take care of that note, so it shan't trouble him.' Then we turned our attention, and looked at some Japanese pictures, and one thing and another that interested him. He was very feeble. That is all I know about it."

On cross-examination the doctor said:

"*Q.* I understand you to say that Phillips made some inquiry of you as to how Devereaux was getting along with the mill?

"*A.* Yes, sir.

"*Q.* You said you thought it would take considerable money, or what?

"*A.* I said I thought it would smell pretty strong of money if he put in the roller process.

"*Q.* Hadn't he put it in then?

"*A.* No, sir.

"*Q.* He hadn't put it in then?

"*A.* No, sir.

"*Q.* How long before he put the roller process in did this conversation occur?

"*A.* It must have been a year after.

"*Q.* He didn't put the roller process in until a year after?

"*A.* I guess not. Some months, at all events, after Mr. Phillips' death, I think, before it was put in.

"*Q.* He said Mr. Devereaux had to have money to carry on the mill. Did he say he wanted to help him some?

"*A.* He made just this remark: 'He wanted some money a while ago.'

"*Q.* He said Devereaux wanted some money a while ago,—you understood of him?

"*A.* Yes, sir.

"*Q.* He said he hadn't any money to let him have, didn't he, because he hadn't sold his wheat?

"*A.* I understood it that way.

"*Q.* He had quite a quantity of wheat, yet he could not help him to the money because he had not sold it,—that was the substance of it, as you understood it?

"*A.* Yes, sir.

"*Q.* So he said he signed a note with him, so he could get it of Mr. Matherson?

"*A.* Yes, sir.

"*Q.* He said when he sold his wheat, so he would have money himself, he could help him to take care of the note, so it would not bother Devereaux?

"*A.* He didn't say that. He says, 'I will try to take care of that, so it shan't trouble him.'

" *Mr. Lyon:* That is all."

2. Testimony by A. H. Warren, as follows, viz.:

"*Q.* Prior to his death? You may state what that conversation was, if you will.

"*A.* Well, we were talking in regard to this mill business, about the town raising Devereaux a bonus; and during that conversation he says, 'I helped Devereaux to $500.' We had a good deal of conversation in regard to the mill, because that was all the topic of conversation in town at that time, and in a casual way he simply remarked that he had helped Devereaux to $500."

There is nothing in this testimony that tends to show that this was a debt of Mr. Phillips. "He helped Devereaux to $500," is the language of Mr. Warren.

" He wanted some money a while ago, and I signed his note to Matherson for $500. I hadn't sold my wheat, and hadn't the money on hand; but I will try and take care of that note, so that it shan't trouble him."

He expressly calls it "his note." He explains why he did not let him have the money when he wanted it. In our opinion, this testimony tended to prove that the deceased was an accommodation maker, and the circuit judge properly directed a verdict for the defendant.

In addition to the above testimony, the claimant offered

in evidence the inventory and appraisal in the estate of
Mr. Phillips. This was to show that he had a large
quantity of land in Bancroft. He also called a Mrs.
Biddleman, who sold the mill to Devereaux. The following
dialogue elucidates the point made upon this testimony:

"*Q.* State whether you saw Phillips and Devereaux in
1886, the latter part of the year, at your house.

"*A.* I can't say just what year it was. I had a talk
with Mr. Phillips at Mr. Devereaux's store, instead of at
our house. He sent for me to come to the store.

"*Q.* Who did?

"*A.* Mr. Phillips.

"*Q.* What was that conversation?

"(Objected to any general conversation.)

"*Q.* About an arrangement for money,—this note?

"*A.* The time I was called to the store was six years ago
this winter.

"*Q.* How long prior to the time you sold the mill to
Devereaux was it?

"*A.* It might have been inside or after that; it might
have been two months after that; I can't tell exactly the
time, but it was six years ago we had the conversation.
It was in the spring soon after that—I can't tell just exactly
how long, how many days or weeks—that Mr. Devereaux
bought the mill.

"*Q.* Now, what did Mr. Phillips want you to come to
the store for?

"*A.* He asked me if I was intending to put in the roller
process in the new mill.

"(Defendant's counsel objected to any conversation
between this witness and Mr. Phillips in regard to putting
in the roller process.)

"*The Court:* I don't think it is competent.

"(Plaintiff excepted.)

"*Mr. McBride:* I want to follow it up by showing he
said he would give Devereaux $500,—any one $500.

"*The Court:* Was there any talk about this note between
you and Devereaux?

"*A.* No, sir, not any; talk about money, though not about
the note.

"*Mr. Lyon:* If it was the money that Mr. Devereaux
got of Mr. Matherson that he gave this note for, I have no
objection.

"*The Court:* Was there anything said about this money?

"*A.* He spoke about giving money towards the mill. I don't know whether that money or some other money.

"*Q.* Did he say anything about this money borrowed from Matherson?

"*A.* No, sir.

"*The Court:* You object to that question?

"*Mr. Lyon:* Yes, sir.

"*The Court:* I will sustain the objection, unless you show it related to this money.

"(Plaintiff excepted.)

"*Mr. McBride:* I expect to follow it' up, and show it related to this very money.

"*The Court:* You had better show that first."

The court was right in excluding the testimony in each instance. The fact that deceased had an interest in Bancroft might have been proper, by way of corroboration, had there been any proof that he had given the bonus, but until some proof of that fact appeared it was immaterial. As to the testimony of Mrs. Biddleman, the court expressed a willingness to admit the conversation as soon as it was shown to have referred to the transaction in question, which alone could make it material. Counsel stated that "he wanted to show that Mr. Phillips had said that he would give Devereaux $500,—any one $500." No intimation was given that it had any closer connection with the note transaction than that in a talk he had offered to give $500 to any one who should put rollers in the mill. This was in a talk about giving money towards the mill. It was within a proper discretion to require some evidence that this testimony would be connected with the note in question. No attempt appears to have been made to give such evidence.

The judgment will be affirmed.

The other Justices concurred.